**UNITED STATES of America,**

v.

**Joseph EVANS, Defendant.**

**No. Crim. A. 88–503.**

United States District Court,
E.D. Pennsylvania.

July 27, 1998.

---

**462**

Robert Goldman, U.S. Atty's Office, Philadelphia, PA, for Plaintiff.

Joseph Miller, Federal Defenders' Ass'n, Philadelphia, PA, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

**AND NOW**, this 27th day of July, 1998, after a hearing concerning whether Joseph Evans's conditional discharge should be revoked pursuant to 18 U.S.C. § 4243(g), the Court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. On July 20, 1992, after a hearing pursuant to 18 U.S.C. § 4243(d), the defendant was conditionally released from commitment by this Court, subject to specific terms and conditions.

2. On September 30, 1997, upon recommendation of the United States Probation Office, the Court scheduled a counseled hearing for the defendant after the defendant failed to comply with certain terms and conditions originally imposed by this Court.

3. On December 1, 1997, this Court held a counseled hearing on the defendant's non-compliance. At the conclusion of the hearing, the Court advised the defendant that he was required to take medication as directed by his mental health counselors and that

failure to comply with this Court's terms and conditions would result in the filing of a revocation petition by the Probation Office.

4. On July 13, 1998, the Probation Office filed a petition stating that the defendant was not in compliance with his mental health program.

5. On July 27, 1998, this Court held a hearing on the petition.

6. On June 26, 1998, mental treatment providers for the Northwest Mental Health Community Center in Philadelphia, PA proceeding with a civil mental health involuntary commitment petition (302 petition) as a result of the releasee's behavior which they believed constituted a danger to another individual. Apparently, Joseph Evans threatened to kill this individual, therefore, the mental health treatment providers proceeded to have him arrested, and he was admitted to Einstein Hospital for psychiatric evaluation and treatment.

7. According the Northwest Mental Health Staff, Mr Evans had been experiencing delusional and racing thoughts, believing that the mental health staff and others, including a secretary for the realtor who managed the apartments, were entering his apartment without his permission, taking things from his apartment, and taking showers in his apartment. On June 22, 1998, Joseph Evans allegedly telephoned the secretary and verbally threatened to shoot her and her staff. He allegedly also told her that he thought that they were playing with his hot water, because he did not have hot water in this apartment. He allegedly stated that he told her if anybody enters his apartment, he will shoot them, and then he will proceed to her office and shoot everybody in that office as well.

8. After having been in the Einstein Hospital from Friday, June 26, 1998, on the 302 involuntary commitment, Evans was entitled to a hearing regarding his release from that commitment. That hearing took place on Tuesday, June 30, 1998, at which time the Einstein Mental health treatment providers recommended that Evans agree to and sign an extension for further inpatient treatment.

He refused to do so and was released to the street that day.

9. The Northwest Mental Health Providers advised that Evans is not cooperating with his mental health regimen for the following reasons:

a) He refused to follow the Einstein Hospital Mental Health Treatment Providers recommendation for further inpatient treatment on June 30, 1998.

b) He is not taking his Tegretol medication as directed as detected by a blood level test.

c) He has not been on time for his monthly injections, sometimes being days late for his appointments. He did not report for his Haldol injection on May 26, 1998.

d) He has not attended the Northwest Center partial hospitalization program, which was verified by the Probation office on December 17, 1997. When confronted with the issue, he said he was attending, and then said that he was not going to attend mental health appointments at Community Council Mental Health Center, where his psychiatrist Dr. Gerald Streets provides treatment. Evans changed his mind and began to attend "Act Now," an employment orientation program as well as his treatment appointments with Dr. Streets. When the "Act Now" program ended on April 28, 1998, the employer under whom he was training did not hire him, and he did not return to the partial hospitalization program.

10. When advised by his Probation Officer that he would have to cooperate with the mental health providers regarding their recommendations as to his housing, he stated that he was not going to cooperate with the mental health staff, and that nobody can tell him where to live.

11. As a result of the hearing, this Court has determined that:

a) the defendant is not adhering to the mental health regiment prescribed for him by his counselors, as required by this Court's terms and conditions; and

b) the defendant has made specific threats of bodily harm against certain individuals.

*Conclusions of Law*

1. Pursuant to 18 U.S.C. § 4243(g) the defendant has violated the terms and conditions of his conditional release. First, the defendant has failed to comply with the prescribed regimen of medical psychiatric, and psychological care and treatment. Second, in light of that failure, and due to a present mental disease or defect, the defendant's continued release would create a substantial risk of bodily injury to another person and serious damage to the property of others.

2. As a result of the defendant's violations, the defendant's conditional release must be revoked by this Court.

3. Pursuant to 18 U.S.C. § 4243, the defendant must be remanded to the custody of the Attorney General for confinement and treatment in a suitable facility until such time as he has recovered from his mental disease or defect to such an extent that his conditional release under a prescribed regiment of medical, psychiatric, and psychological care and treatment would no longer create a substantial risk of bodily injury to another person and serious damage to the property of another.